IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation | ) ) ) | CV. NO. 09-00350 DAE/BMK |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DAVID A. NAAI, individually, and as Trustee for the HERMAN H.A. NAAI TRUST and Trustee for the HELEN Y. NAAI Trust, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

<u>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

On January 19, 2010, the Court heard Plaintiff's Motion.  Richard B. Miller, Esq., appeared at the hearing on behalf of Plaintiff; Daniel T. Kim, Esq., appeared at the hearing on behalf of Defendant.  After reviewing the motion and the supporting and opposing memoranda, the Court **GRANTS** Plaintiff's Motion.

<u>BACKGROUND</u>

Plaintiff Allstate Insurance Company ("Plaintiff" or "Allstate") and Defendant David A. Naai, individually and as Trustee of the Herman A.H. Naai Trust and the Helen Y. Naai Trust ("Defendant" or "Naai") agree on all material facts, leaving no genuine issue of material fact before this Court.

I.      The Underlying Lawsuit

On March 6, 2009, Adam Aku, individually and as Personal

Representative of the Estate of Teyisa Punahelekeipipi Ipukalanio `Kekapua

`Ikeakua Aku ("Teyisa"), a deceased minor, and as next friend of Keakaokalani

Aku ("Keaka"), a minor; and Chantell Burke, individually and as next friend for

Skyler Burke ("Skyler"), a minor, (collectively the "plaintiffs") filed a complaint in

the First Circuit Court against various defendants, including Allstate insured

Herman A.H. Naai, the Herman A.H. Naai Trust, Helen Y. Naai, the Helen Y. Naai

Trust and David A. Naai in an action denominated *Adam Aku, et al. v. Sherisse L.*

*Thompson, et al.*, Civil No. 09-1-0533-03 EEH (the "Underlying Lawsuit").

(Plaintiff's Statement of Concise Facts "PSCS" ¶ 1, Doc. # 13.)

The facts in the Underlying Lawsuit are both tragic and compelling.

The complaint alleges that Herman and Helen Naai, their respective trusts, and

David Naai held legal title to property located at 53-224 Kamehameha Highway in

Hauula, on which was situated a cluster of cabins and other structures.  According

to the plaintiffs, the Naais rented out the subject property and were its landlords.

Also according to the plaintiffs, several other individuals and entities named as

defendants in the Underlying Lawsuit acted as managers for the property.  They

further allege that they had entered into a rental agreement with the Naais and/or the property's managers and were living in Cabin H-2 on the property.  (<u>Id.</u> ¶ 2.)

The complaint in the Underlying Lawsuit states that on or about March 6, 2007 another of the defendants, Sherisse L. Thompson, was reversing an SUV on a common area/playground area next to the resident manager's dwelling on the rental property when the vehicle struck 2-year-old Teyisa and her 4-year-old brother, Keaka.  Teyisa was killed and Keaka seriously injured. Also according to the Complaint, plaintiffs Adam Aku, Chantell Burke and Teyisa's brother Skyler witnessed the accident.  (<u>Id.</u> ¶ 3.)

According to the plaintiffs, Teyisa and Keaka were playing with the children of other tenants of the property at the time of the accident.   Ms. Thompson had allegedly just picked up her son from the resident manager's dwelling when she was backing up near the children.  (<u>Id.</u> ¶ 4.)

The plaintiffs allege that the Naais and their managing agents had a duty to prevent injury to children who they knew or should have known would be playing in the area where the accident occurred and breached that duty by allowing the resident manager's dwelling to be built in the middle of a common/playground area and allowing vehicles to drive and park on the common/playground area next to the resident manager's dwelling.  The plaintiffs further allege that the Naai

parties' negligence resulted in an unsafe and dangerous condition on the rental property.  The plaintiffs also contend that the proximity of the common/playground area to the resident manager's dwelling and parking area created an attractive nuisance.  (Id. ¶ 5.)  The plaintiffs in the Underlying Lawsuit seek special and general damages, prejudgment interest, attorneys' fees and costs.  (Id. ¶ 6.)

II.    The Policy

Allstate issued a comprehensive personal liability Policy No. 076868982 to Herman Naai with an effective date of April 13, 1995 (the "Policy"). (Id. ¶ 7.)  The Policy was in effect on the date of the subject accident.  The Policy is written on form U10173, which includes the following liability insuring language:

**Part 1 Coverage X — Family Liability Protection**

***Losses We Cover***
**We** will pay all sums arising from a loss which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, we will provide a defense with counsel of **our** choice. **We** will defend even if the allegations are not true. **We** are not obligated to pay any claim or judgment or defend any suit after **we** have exhausted the limit of **our** liability.

4

(<u>Id.</u> ¶ 8 (emphasis in original).) The Policy also includes the following exclusion

under both Part 1 Coverage X — Family Liability Protection and Part 2 Coverage

Y — Guest Medical Protection:

> ### *Exclusions – Losses We Do Not Cover*
>
> **....**
>
> **5.**   **We** do not cover **bodily injury** or **property damage** arising out of the ownership; operation; maintenance; use; occupancy; renting; loaning; entrusting; loading or unloading of any motorized land vehicle or trailer. This exclusion does not apply to:
>
>> **a)**   a motorized land vehicle in dead storage or used exclusively on the **residence premises**;
>> **b)**   any motorized land vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from the **residence premises**.
>> **c)**   a golf cart owned by an **insured person** when used for golfing purposes;
>> **d)**   a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle.
>> **e)**   **bodily injury** to a **residence employee**.
>
> **....**

(<u>Id.</u> ¶ 9 (emphasis in original).)   The Policy also includes the following relevant

definitions:

> ### *Definitions Used Throughout This Policy*

1.    **"You"** or **"your"** — mean the policyholder named on the declarations page and that policyholder's resident spouse.

….

3.    **"Insured Person"** — means **you** and, if a resident of **your** household, any relative and any dependent person in **your** care.

Under the Family Liability Protection and Guest Medical Protection coverage, "**insured person**" also means:

**a)**    any person or organization legally responsible for loss caused by animals or watercraft **we** cover which are owned by an **insured person**. **We** will not cover any person or organization using or having custody of animals or watercraft in any **business** or without permission of the owner.

**b)**    with respect to the use of any vehicle **we** cover, any person while engaged in the employment of an **insured person**.

….

6.    **"Insured Premises"** — means:

**a)**    the **residence premises**; and
**b)**    any other **residence premises** described on the declarations page;
**c)**    any other **residence premises** acquired by **you** during the premium period;
**d)**    any part of a premises not owned by an **insured person** but where an **insured person** in living temporarily;
**e)**    cemetery plots or burial vaults owned by an **insured person**;
**f)**    vacant land, other than farm land, owned by or rented to an **insured person**;

> g)     land owned by or rented to an **insured person** where a one, two, three or four family dwelling is being built as that person's residence.

> ….

> **9.**     **"Residence Premises"** — means a one, two, three or four family dwelling, where **you** reside, including other structures and land, which is described on the declarations page.

(<u>Id.</u> at ¶ 10 (emphasis in original).)  The Policy also includes the following

provision:

> ***We Make The Following Agreements With You***

> ….

> **4.**     **Continued Coverage After Death**

> If **you** die, coverage will continue until the end of the premium period for:

> a)     **Your** legal representative but only with respect to **your insured premises** and property covered under this policy on the date of **your** death.
> b)     Any person having proper temporary custody of **your insured premises** until a qualified legal representative is appointed.
> c)     An **insured person**.

(Id. ¶ 11 (emphasis in original).)  David Naai[1] has tendered defense of the

Underlying Lawsuit to Allstate under the Policy.

On July 29, 2009, Allstate filed a Complaint for Declaratory Judgment

asking this Court to find that Allstate has no duty to defend and/or indemnify Naai

in any capacity under the Policy for the claims asserted against him in the

Underlying Lawsuit, and for, costs, reasonable attorneys' fees, and any other relief

awarded by the Court.  (Doc. # 1.)  On September 4, 2009, Defendant filed his

Answer.  (Doc. # 8.)  On November 17, 2009, Plaintiff filed the instant Motion for

Summary Judgment ("MSJ," Doc. # 12) and its Separate and Concise Statement of

Facts.  ("PSCS," Doc. # 13.)  On December 29, 2009, Defendant filed his

Opposition ("Opp'n," Doc. # 17) and Separate and Concise Statement of Facts.

("DSCS," Doc. # 18.)  On January 5, 2010, Plaintiff filed its Reply.  (Doc. # 19.)

---

[1] According to Defendant, Herman A.H. Naai died on or about December 1,
2008 and Helen Y. Naai died on or about January 2, 1994.  (PSCS ¶ 12.) Although
Plaintiff alleges that there is a question as to whether David Naai qualifies as an
insured under the Policy, Allstate is not, for purposes of this motion, contesting his
status as an insured.  Rather, Allstate's position is that even assuming, arguendo,
that Mr. Naai qualifies as an insured, coverage for the claims asserted in the
Underlying Lawsuit is precluded by the Policy's exclusion for bodily injury arising
out of the operation or use of a motor vehicle. (MSJ at 7 n.1.)

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.  Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986)).  If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party.  The nonmoving party's evidence must be taken as true.  T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 632 (9th Cir. 1987) (internal citations omitted).

However, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.  Instead, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.  Id. at 630 (citation omitted) (emphasis added).  The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the factual context makes the non-moving party's claim or defense implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of trial.  Id. at 587.

## DISCUSSION

Plaintiff seeks summary judgment on the ground that it has no duty under the Policy to defend or indemnify Defendant for claims asserted against him in his individual capacity and/or as Trustee of the Herman A.H. Naai Trust and the

Helen Y. Naai Trust in the Underlying Lawsuit.  Specifically, Plaintiff claims that coverage for the underlying claims is precluded by the Policy's exclusion for bodily injury arising from the use or operation of any motor vehicle.

I.    Hawai'i Insurance Coverage Law

State law governs the resolution of substantive issues in this diversity action.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).

Under Hawaii law, construction of a contract, where material facts are undisputed, is a question of law for the court.  See National Union Fire Ins. Co. v. Reynolds, 889 P.2d 67, 71 (Haw. App. 1995); Cho Mark Oriental Food v. K & K International, 836 P.2d 1057, 1064 (Haw. 1992).  Thus, summary judgment is appropriate when the court determines, as a matter of law, that the terms of an insurance policy do not provide coverage.  See Crawley v. State Farm Mutual Automobile Ins. Co., 979 P.2d 74, 78 (Haw. App. 1999); Foote v. Royal Ins. Co. of America, 962 P.2d 1004, 1008 (Haw. 1998).

Insurance policies are subject to the general rules of contract construction.  Dawes v. First Ins. Co. of Hawai'i, 883 P.2d 38, 42 (Haw. 1994). The terms of insurance policies must be interpreted according to their plain, ordinary and accepted sense in common speech, unless it appears from the

11

language of the policies that a different meaning is intended.  Id.   Insurance

polices are contracts of adhesion and must be construed liberally in favor of the

insured and any ambiguities must be resolved against the insurer.  Tri-S Corp. v.

Western World Ins. Co., 135 P.3d 82, 98 (Haw. 2006) (citation omitted).

Insurance policies must be construed in accord with the reasonable expectations of

a layperson.  Id.

An "[a]mbiguity exists . . . only when the [policy] taken as a whole, is

reasonably subject to differing interpretation.  Absent an ambiguity, the terms of

the policy should be interpreted according to their plain, ordinary, and accepted

sense in common speech . . . ."  Oahu Transit Services, Inc. v. Northfield Ins. Co.,

112 P.3d 717, 722 n.7 (Haw. 2005) (brackets in original) (citation omitted).

"Liability insurers have the same rights as individuals to limit their

liability, and to impose whatever conditions they please on their obligation,

provided they are not in contravention of statutory inhibitions or public policy."

Liberty Mut. Ins. Co. v. Sentinel Ins. Co., Ltd., 205 P.3d 596, 614-615 (Haw. App.

2009).

An insurer's duty to defend is contractual in nature.  Commerce &

Indus. Ins. Co. v. Bank of Hawaii, 832 P.2d 733, 735 (Haw. 1992) (citation

omitted).  An insurer's duty to defend arises whenever there is a potential for

coverage, and thus does not depend on whether liability is ultimately established.

Id.  Under the "complaint allegation rule," the duty to defend is determined at the time that the defense is tendered to the insurer or the insurer otherwise is on notice that a complaint has been filed against its insured.  See, e.g., Dairy Road Partners v. Island Insurance Co. Ltd., 992 P.2d 93, 108-16 (2000); Commerce & Indus. Ins. Co., 832 P.2d at 735.  The potential insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot."  Dairy Road Partners, 992 P.2d at108-16.

Where the pleadings fail to allege any basis for recovery within the coverage of the subject policy, the insurer has no obligation to defend.  Hawaiian Holiday Macadamia Nut Co. v. Indust. Indem. Co., 872 P.2d 230, 233 (Haw. 1994) (citation omitted).  An insurer's duty to defend is not triggered by an insured's speculation about the facts or claims that a plaintiff might plead.  See Allstate Ins. Co. v. Pruett, 186 P.3d 609, 623 (Haw. 2008); see also Sony Computer Entertainment America, Inc. v. American Home Assur. Co., 532 F.3d 1007, 1020 (9th Cir. 2008) (An insured "may not speculate about unpled third party claims to manufacture coverage.") (quotation omitted); The Upper Deck Co., LLC v. Federal Ins. Co., 358 F.3d 608, 615 (9th Cir. 2004) ("An insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding

potential liability or ways in which the third party claimant might amend its complaint at some future date.") (quotation omitted).

II.    The Policy

The Policy unambiguously excludes coverage for bodily injury or property damage arising out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motorized land vehicle or trailer (the "automobile exclusion").  The Court finds that none of the exceptions to the automobile exclusion applies here, and Defendant does not assert otherwise.  However, Defendant nonetheless argues that the automobile exclusion is ambiguous because the exclusion fails to state that it applies to automobile accidents where the insured has no connection to the automobile involved in the accident.  (Opp'n at 13.)  Defendant also argues that his underlying liability does not arise out of the use of an automobile, but out of the existence of a structure on the insured property.  (Id. at 10-11.)

A.    "Arising under"

Plaintiff argues that the automobile exclusion bars coverage for Defendant under the Policy.  Defendant argues that the automobile exclusion is not applicable because the claims against him in the Underlying Lawsuit relate only to

the construction or existence of a structure on the property and alleged building

code violations.  (Opp'n at 10-11.)

Hawaii courts apply a three-part test in determining whether an injury

arises from the use or operation of a motor vehicle:

> The first factor [is] whether the ... motor vehicle was an active
> accessory in causing [the] plaintiff's injuries....
> The second factor [is] whether there was an independent act breaking
> the causal link between "use" of the vehicle and the injuries
> inflicted....
> The third factor [is] whether the injuries resulted from use of the
> vehicle for transportation purposes[.]

Oahu Transit Services, Inc. v. Northfield Ins. Co., 112 P.3d 717, 722 (Haw. 2005)

(citation omitted, brackets in original).  In Oahu Transit Services, the operator of

Oahu's bus service sought coverage under its commercial general liability policy

for claims arising from an incident in which a disabled passenger suffered a spinal

cord injury after a handivan driver unfastened the seat belt securing the passenger

in his wheelchair.  Id. at 719.  The insurance policy at issue included an exclusion

for "[b]odily injury or property damage arising out of the ownership, maintenance,

use or entrustment to others of any aircraft, auto or watercraft owned or operated

by or rented or loaned to any insured."  Id. at 718.   The court found the phrase

"arising out of the ownership, maintenance, [or] use" to be unambiguous based

upon precedent.  Id. at 721.

15

The underlying complaint in <u>Oahu Transit Services</u> alleged that the defendants were negligent in the hiring, training and supervision of the handivan driver. <u>Id.</u> at 721. However, the court held that the plaintiff's theories of liability were not determinative of the existence of coverage. <u>Id.</u>; <u>see also</u> <u>County of Kauai v. Scottsdale Ins. Co., Inc.</u>, 978 P.2d 838 (Haw. 1999) (law enforcement insurance policy containing an automobile exclusion did not cover the insured against a claim for negligent supervision because the insured's liability stemmed from an automobile accident). The Hawaii Supreme Court held that the exclusion was unambiguous and applied to the claims against the transit company because under the three-part test, the underlying lawsuit arose from the use or operation of an automobile. <u>Id.</u> at 718-21.

Here, the Underlying Lawsuit arises solely from an automobile accident, alleged to be caused in part by the danger of allowing automobiles to be parked in close proximity to premises where children play. Specifically, plaintiffs allege that by allowing the resident manager's dwelling to be built in the middle of a common/playground area and allowing vehicles to drive and park on the common/playground area next to the resident manager's dwelling, the Naais caused or contributed to the accident's occurrence because they created an unsafe condition and/or attractive nuisance. (PCSF ¶ 5.)

16

The plaintiffs' injuries were caused by Thompson's SUV hitting the children.  (Id. ¶ 3.)  The Underlying Lawsuit is one of a motor vehicle tort and all damages requested arise from the injuries and emotional distress, inter alia, allegedly caused by Thompson's SUV hitting the children.  (Id., Ex. 1.)  There was no independent act breaking the causal link between "use" of the vehicle and the injuries inflicted because the injuries were directly caused by the SUV while it was being driven by Thompson to pick up her child.  (Id.); See Oahu Transit Services, Inc., 112 P.3d at 722.  Therefore, under Hawaii's three-part test, plaintiffs' complaint in the Underlying Lawsuit arises from the use or operation of a motor vehicle.

Defendant contends that the cases cited by Plaintiff are factually distinguishable because they all involved the liability of the insured which arose out of the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of an automobile and therefore involved liability for acts of the driver.  (Opp'n at 9-10.)  The theories of liability in the complaint do not determine the existence of coverage; any liability of the Naais arises solely from Thompson's use of the motor vehicle.  See id. at 724.  "An insured cannot be liable . . . for negligence in the abstract.   Rather, an insured is liable for negligence with respect to a particular object or instrumentality."  Allstate Indem. Co. v.

17

Russell, No. 08-15669, slip op., 2009 WL 2870051 at *1 (9th Cir. September 8, 2009) (citation omitted); see also Standard Mut. Ins. Co. v. Bailey, 868 F.2d 893 (7th Cir. 1989) (the exclusion is framed in terms of the instrumentality causing harm).   Here, that instrumentality is an automobile from which plaintiffs' cause of action against Naai arose, no matter how such a cause of action is framed in plaintiffs' complaint.

      B.      Application of the automobile exception

      The Policy's automobile exclusion states: **We** do not cover **bodily injury** or **property damage** arising out of the ownership; operation; maintenance; use; occupancy; renting; loaning; entrusting; loading or unloading of any motorized land vehicle or trailer.  (PSCS, Ex. 2 (emphasis in original).)  Hawaiʻi courts have upheld automobile exceptions in homeowners' policies.  See Oahu Transit Services, Inc., 112 P.3d 717; Fortune v. Wong, 702 P. 2d 299 (Haw. 1985) (no insurance coverage for acts of a minor child of parents who had a homeowner's policy with an exclusion for bodily injuries arising from the use of a motor vehicle).

      Defendant cites Essex Ins. Co. v. City of Bakersfield, 65 Cal. Rptr. 3d 1 (Cal. App. 2007) in support of his argument that the Policy's automobile exclusion is ambiguous and should be construed in favor of coverage.  (Opp'n at

11-14.)  In Essex, the insurance policy at issue was issued to the City of

Bakersfield for a special event.  Essex, 65 Cal. Rptr. 3d at 4.  The policy contained

two exclusions for automobiles, similar to the automobile exclusion in the instant

case.[2]  Id. at 8.  On the night of the event, an accident involving an automobile and

a tractor-trailer occurred near the entrance to the event parking lot.  Id. at 3.  The

underlying lawsuit against the City alleged "bodily injury" proximately caused by

a dangerous condition created by the event.  Id. at 8.  The Essex Court found that

the automobile exclusions did not apply to the underlying lawsuit because the

exclusions were "unusual and unfair limitations of coverage that defeat the

insured's reasonable expectations of coverage" in light of the fact that the

exclusions were not brought to the attention of the insureds.  Id. 8-9 ("The auto

exclusions when viewed in the context of the insurance policy do not plainly and

clearly exclude coverage for bodily injuries arising from automobile accidents

where the insured had no connection to the automobiles involved.")  The court

found that an average layperson would interpret the auto exclusions as applying to

lawsuits involving "the use of or other acts relating to any "auto" by any insured or

_____

[2] The auto exclusions provided no coverage for: " 'bodily injury' or
'property damage' arising out of, caused by or contributed to by the ownership,
non-ownership, maintenance, use or entrustment to others of any 'auto' " (the auto
exclusion) or for any injury, loss or damage arising out of automobiles (the special
events/spectator liability endorsement)."  Essex, 65 Cal. Rptr. 3d at 9.

on the insured premises[,]" and the accident at issue neither occurred on the premises nor was there any evidence that the automobiles were going to or leaving the insured premises.  Id. at 9-11.

In support of Defendant's argument that this Court should apply the reasoning of the Essex Court and find the automobile exclusion inapplicable, Defendant states that the parties do not dispute that Naai has no connection to the driver or the automobile involved in the Underlying Lawsuit or that the automobile was not owned, operated, maintained, used, occupied, rented, loaned, entrusted, loaded or unloaded by Naai or by any agent or employee of Naai.  (See id. at 5, 10.)

Insurance policies are contracts of adhesion and they are to be construed liberally in favor of the insured and the ambiguities resolved against the insurer.   However, ambiguity is found only when the policy taken as a whole is reasonably subject to differing interpretation.   Absent an ambiguity, the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech . . . ."  Oahu Transit Services, Inc., 112 P.3d at 722 n.7 (brackets in original) (citation omitted).  The Court does not find the language of the automobile exclusion to be ambiguous.  The Policy's automobile exclusion

clearly states that it applies to "any" motorized land vehicle.  This Court will not create ambiguity where there is none.

Moreover, the Court does not find the automobile exclusion to be an unusual and unfair limitation of coverage that defeats the insured's reasonable expectations of coverage.  In fact, the automobile exclusion is repeated twice in the Policy and clearly states the limitations imposed by Allstate on its coverage. Defendant wishes the Court to adopt the reasoning of the <u>Essex</u> Court, however, the Hawai'i Supreme Court has consistently upheld similar to virtually identical automobile exclusions under analogous, albeit slightly different facts, finding such exclusions not to be unusual and unfair limitations of coverage and to be within an insured's reasonable expectation of coverage.  <u>See</u>, <u>e.g.</u>, <u>Oahu Transit Services, Inc.</u>, 112 P.3d 717; <u>Fortune</u>, 702 P. 2d 299.  Additionally, unlike <u>Essex</u>, in the instant case the accident occurred on the insured property.

The plain language of the automobile exclusion focuses on the connection between a vehicle and the injury, not between a vehicle and the insured.  Additionally, as Plaintiff argues, if the purpose of the exclusion was merely to require the insured to purchase a separate automobile insurance policy, then the exclusion would be limited by its express terms to bodily injury or property damage arising out the insured's ownership, operation, use, etc. of a motor vehicle.

21

(Reply at 9 (citing <u>Specialty Nat. Ins. Co. v. OneBeacon Ins. Co.</u>, 486 F.3d 727 (1st Cir. 2007) (policy excluded damages "arising out of the ownership, maintenance, [or] use . . . of any . . . auto . . . owned or operated by or rented or loaned to any insured.")  Here, the automobile exclusion is not similarly limited in its application, but instead expressly and unambiguously applies to bodily injury or property damage arising from the operation or use of any motor vehicle.  <u>See Allstate Indem. Co.</u>, 2009 WL 2870051, *2 ("The exclusions speak only of the ... use [or] occupancy of a vehicle generally, and . . . [exclude] negligent supervision arising from occupancy of any vehicle.  Nothing in their language suggests that they apply only if the insured owned, used or occupied the vehicle.") (internal quotations and citations omitted).  Further, risks associated with  motor vehicle accidents are not normally risks associated with home or property ownership.  <u>See Fortune</u>, 702 P. 2d at 306 ("The use of an automobile presents hazards not closely associated with the home, for which other insurance is customarily carried and is generally understood to afford coverage.")

In illustration, Plaintiff cites <u>Allstate Ins. Co. v. Keillor</u>, 511 N.W.2d 702, 704-05 (Mich. App. 1993) where the court held that a homeowners policy with an automobile exclusion almost identical to the exclusion in the instant case did not afford coverage for its insured's son for damages allegedly arising out of

the son's furnishing of liquor to a minor who subsequently became involved in a

head-on collision that killed the occupant of another vehicle.  As stated by the

court:

> [t]his exclusion also applies in this case because the underlying injury
> arose out of the use of a motorized land vehicle. We disagree with
> defendant . . . that in order for this exclusion to apply, ownership or
> use by the insured is necessary to trigger the exclusion. A plain
> reading of the exclusionary clause does not compel that result. Rather,
> the clause unambiguously states that Allstate will not cover bodily
> injury or property damage arising out of the use of any motorized land
> vehicle.

Id. at 705.

     As a policy matter, Defendant states that if this Court adopts Allstate's

interpretation of the automobile exclusion, Naai would be left with no ability to

purchase insurance to cover against the specific risk in the Underlying Lawsuit.

(Opp'n at 13-4 (citing Essex, for the proposition that automobile exclusions are

designed to limit risks that are normally covered by other insurance.)  While this

may or may not be true, insurers have a contractual right to limit their liability and

to impose conditions on their obligations that are not in contravention of statutory

inhibitions or public policy.  Liberty Mut. Ins. Co., 205 P.3d at 614-15.  Defendant

identifies no statutory or public policy prohibition that would preclude an insurer

from excluding liability in a homeowners policy for any loss connected with an automobile accident.

In the instant case, under the factors enumerated in <u>Oahu Transit Services</u>, the plaintiffs' claims in the Underlying Lawsuit "arose" from the operation or use of a motorized land vehicle on the insured property.  The Policy is not ambiguous; the Policy's automobile exclusion's plain language states that it does not apply to bodily injury arising from the operation of any motor vehicle and the Underlying Lawsuit is thus excluded from coverage under the Policy.

For all the reasons above, the Court finds that Allstate has no duty to indemnify Naai under the Policy.  Similarly, Plaintiff also owes no duty to defend Naai, because the Underlying Lawsuit raises no causes of action against the Naais that arises from an event other than the automobile accident, and therefore, not even the potential for coverage arises because of the application of the Policy's automobile exclusion in this case.  <u>See</u> <u>Oahu Transit Services, Inc.</u>, 112 P.3d at 725.

Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment.

CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion

for Summary Judgment.  The Clerk of the Court is hereby directed to enter

judgment in favor of Plaintiff.


IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 22, 2010.


_____
David Alan Ezra
United States District Judge


Allstate Ins. Co. v. Naai, CV. NO. 09-00350 DAE/BMK; ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT